IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WESSLEY RODGERS,

    Plaintiff,

v.                                         Case No. 22-CV-00641 KG/JFR

RAUL TORREZ,

    Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>
<u>GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

THIS MATTER is before the Court on Defendant Raul Torrez's Motion for Summary Judgment, (Doc 22), filed June 29, 2023, which is fully and timely briefed. *See* (Docs. 23, 24). The Court having considered the briefing, the evidence, and the relevant law, grants Defendant's Motion for Summary Judgment.

I.    *Background*

    A. *Procedural Background*

On July 13, 2020, Bernalillo County District Attorney, Raul Torrez, filed a civil action against the New Mexico Civil Guard (NMCG), its members, and affiliates, including Plaintiff, Wessley Rodgers. The action was filed in state court seeking to enjoin NMCG from operating as a private militia without authority. (Doc. 1-2). The action sought declaratory and injunctive relief. *Id.* The purpose of Torrez's civil action was to protect public safety, particularly the safety of Bernalillo County's residents, visitors, and law-enforcement officers. *Id.* at 4. The civil action was filed following a protest at the statue of Spanish conquistador Juan de Onate in Albuquerque, NM. *Id.* at 2, 5. At this protest, the NMCG was present in military style gear acting as a paramilitary without authority when an individual, not affiliated with the NMCG, shot

and injured another protester. *Id.* at 2. According to Torrez's Complaint, the NMCG's paramilitary activity heightened the threat to public safety and intimidated the public's exercise of First Amendment rights. *Id.* at 4.

Torrez named Plaintiff in his lawsuit as a member of the NMCG based on his participation in a podcast where he discussed his affiliation with the group and participation in some of the group's activities. *Id.* at 8; (Doc. 22) at 5. Plaintiff, however, was not a member of the NMCG at the time Torrez's lawsuit was initiated. (Doc. 1) at 2.

Following Torrez's lawsuit, Plaintiff filed his Complaint on August 29, 2022, against Torrez alleging vindictive prosecution and abuse of the judicial system pursuant to 42 U.S.C. § 1983. (Doc. 1) at 1, 5. Plaintiff argues Torrez named him in the suit to further a political agenda. (Doc. 1) at 2. Plaintiff also alleges malicious and intentional retaliation in violation of his First Amendment rights for speaking on the podcast. *Id.* Plaintiff requests declaratory relief, actual and punitive damages, attorneys' fees, and an order enjoining Torrez from using the legal process to harass, intimidate, and retaliate against Plaintiff. *Id.* at 5.

On June 29, 2023, Torrez filed his Motion for Summary Judgment arguing he is entitled to absolute prosecutorial immunity because he was acting solely in his capacity as the Bernalillo County District Attorney when he filed the lawsuit against Plaintiff. (Doc. 22) at 1. Torrez also argues he is entitled to absolute immunity regardless of whether he had a political motive, and that Plaintiff has not articulated damages to survive summary judgment. *Id.* at 13. In response, Plaintiff argues Torrez is not entitled to immunity because he violated Plaintiff's First Amendment rights through vindictive prosecution and retaliation. (Doc. 23). Plaintiff also argues because Torrez brought a civil lawsuit, he cannot be protected by absolute prosecutorial immunity. *Id.* at 8–9. In his reply, Torrez distinguishes cases cited by Plaintiff and argues

Plaintiff offers no evidence to create an issue of material fact regarding prosecutorial immunity. (Doc. 24).

### B. *Undisputed Material Facts*

The facts in this section are either undisputed or stated in light most favorable to the nonmovant, Plaintiff. To the extent proffered facts have been omitted, the Court deems them immaterial to the Motion.

At all material times, Torrez was acting solely in his official capacity as the District Attorney for Bernalillo County, New Mexico. (Docs. 22, 23) at 3, Undisputed Material Fact ("UMF") 1. The NMCG was a private militia established in early 2020 by Bryce Spangler. (Docs. 22, 23) at 3, UMF 2. The NMCG was not organized or authorized by any state, federal, or local law enforcement agency. (Docs. 22, 23) at 3, UMF 3. The NMCG appeared at several public gatherings throughout the summer and spring of 2020, during which its members and associates dressed in military garb, combat fatigues, and carried rifles, pistols or other assault equipment or devices. (Docs. 22, 23) at 3, UMF 4. During this time, the NMCG conducted training sessions or "musters," in which Plaintiff attended at least one and signed the guest book. (Doc. 22-B) 39:3-6. On June 29, 2020, Plaintiff appeared as a guest speaker on a podcast broadcasted by NMCG founder. (Doc. 22) at 4, (Doc. 23) at 3, UMF 8. During the podcast, Plaintiff stated he was "very impressed with the degree of professionalism" he witnessed while attending an event with NMCG members and he was "proud to be associated with [the NMCG]." (Doc. 22) at 4, (Doc. 23) at 3, UMF 9–10.

After months of demonstrations and public protests held across Bernalillo County in the wake of George Floyd's death, Torrez filed a "*Verified Complaint for Injunctive and Declaratory Relief*" against the NMCG and several known members and associates. (Doc. 22) at 4, (Doc. 23)

at 3, UMF 11. Torrez's Complaint requested the trial court exclusively and specifically declare Defendants were in violation of the New Mexico Constitution and state laws. (Doc. 22) at 4, (Doc. 23) at 3, UMF 12. The Complaint also contained the potential threats to public safety and involvement in public demonstrations and protests by the NMCG. (Doc. 22) at 5, (Doc. 23) at 3, UMF 13. The Complaint specifically referenced the June 29, 2020, podcast that Plaintiff attended and identified himself as being affiliated with the NMCG. (Doc. 22) at 5, (Doc. 23) at 3, UMF 14.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment should be granted if the movant establishes there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.*

The parties must support factual allegations with evidence and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–52.

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). That said, the nonmovant still bears the burden to produce real evidence. The nonmoving party cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

  B. *Absolute Prosecutorial Immunity*

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976).[1] "Absolute prosecutorial immunity attaches only to those activities 'intimately associated with the judicial phase of the criminal process.'" *England v. Henricks*, 880 F.2d 281, 285 (10th Cir. 1989) (citing *Imbler*, 424 U.S. at 430). "[A]bsolute immunity may not apply when a prosecutor…is instead engaged in other tasks…[like] investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009). However, absolute immunity "may attach even to…administrative or investigative activities when these functions are necessary so that a

---

[1] The Supreme Court was guided by immunity conferred at common law and the interests behind it, focusing on "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427–28.

5

prosecutor may fulfill his function as an officer of the court." *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991)).

"[D]etermining whether to grant a prosecutor absolute immunity requires courts to take a functional approach…wherein they examine the nature of the function performed, not the identity of the actor who performed it." *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (internal citations and quotations omitted). The Tenth Circuit has established absolute immunity extends to "government lawyers involved in civil proceedings." *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (quoting *Robinson v. Volkswagenwerk*, 940 F.2d 1369, 1373 n.4 (10th Cir. 1991)). For example, in *Benavidez*, the Tenth Circuit held the city attorney and assistant city attorneys were entitled to absolute immunity for preparing and filing a motion for protective order on behalf of the city clerk because they were acting in their capacity as advocates for the government. 931 F.3d at 1231. The Court reasoned "absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings and which occur in the course of his or her role as an advocate for the government." *Benavidez*, 931 F.3d at 1231; *see also Burns v. Reed*, 500 U.S. 478, 495 (stating inquiry is "whether the prosecutor's actions are closely associated with the judicial process"). Thus, "the determinative factor is 'advocacy' because that is the prosecutor's main function…." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1209 (10th Cir. 2022) (quoting *Rex v. Teeples*, 753 F.2d 840, 842 (10th Cir. 1985)).

*III.    Discussion*

Torrez argues he is entitled to absolute prosecutorial immunity. The Court agrees for two reasons. First, Torrez is entitled to absolute prosecutorial immunity because he was acting

within the scope of his prosecutorial duties when he filed the civil suit against Plaintiff to prevent the NMCG from acting as a private militia without authority. In making this determination, the Court finds it beneficial to review the statutory duties of a district attorney under New Mexico law. *See, e.g.*, *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1055 (D. Ariz. 2012) (citing *Butz v. Economou*, 438 U.S. 478, 515–517) ("absolute immunity has sometimes been applied to government attorneys for bringing civil enforcement proceedings pursuant to their statutory duties"). New Mexico defines the duties of the district attorney in relevant part:

> Each district attorney shall:
> (1) prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and *civil*, in which the state or any county in his district may be a party or may be interested.

NMSA 1978, § 36–1–18 (A)(1) (2001) (emphasis added). The New Mexico Supreme Court has provided "it is the District Attorney who is elected by the people of this state to decide…what charges to bring and what people to prosecute in the best interest of the people of the State of New Mexico." *State v. Brule*, 1999–NMSC–26, ¶14 (internal citation and quotations omitted).

According to his statutory duties, Torrez had authority to prosecute a civil case for the state in Bernalillo County. Here, it is undisputed that Torrez's Complaint sought to minimize potential threats to public safety. UMF 13. It follows that both the state of New Mexico and Bernalillo County would take an interest in such measures. Therefore, it is plainly clear from the text of the New Mexico statute that Torrez was within the bounds of his authority as the District Attorney for Bernalillo County when he filed a civil action against Plaintiff.

Second, the Tenth Circuit's functional test supports the Court's finding that Torrez is entitled to prosecutorial immunity. Torrez's role as a prosecutor is not the focus of the inquiry, rather, the Court examines the nature of the function he performed. Similar to the function of the city attorney's action in *Benavidez*, the function of Torrez's action was to protect public safety as

an advocate for the state. Torrez brought the civil action to protect public safety in his official capacity as the District Attorney in response to events that occurred at protests in Bernalillo County. UMF's 1, 11. It is clear to this Court that in protecting public safety, Torrez was acting as an advocate for the government. Consistent with the Tenth Circuit's holding in *Benavidez*, this Court concludes that when Torrez took the affirmative step of seeking declaratory and injunctive relief against Plaintiff, he was advocating for the government, and therefore, is entitled to absolute prosecutorial immunity.

Plaintiff's response that Torrez was outside of his prosecutorial authority to seek civil relief against him is unavailing. Although the *Imbler* court found absolute prosecutorial immunity for activities "intimately associated with the judicial phase of the criminal process," the Supreme Court has since expanded the appropriate inquiry to "whether the prosecutor's actions are closely associated with the judicial process." *Imbler*, 424 U.S. at 430; *Burns*, 500 U.S. at 495. Thus, absolute prosecutorial immunity is not limited to the criminal process. Accordingly, this Court finds prosecuting a case, civilly or criminally, is not just closely related, but directly related to the judicial process and advocacy. This finding is also consistent with what is provided by Torrez's statutory duties.

Plaintiff appears to focus much of his response on the issue of vindictive prosecution and First Amendment retaliation. Because the Court concludes Torrez is entitled to absolute prosecutorial immunity, it does not reach Plaintiff's arguments addressing vindictive prosecution and First Amendment retaliation.[2]

---

[2] While the Court does not reach these arguments, it notes Plaintiff did not offer actual evidence to support his motive argument. Instead, he provided only mere conclusory allegations that Torrez was substantially motivated by the podcast when he filed his civil action. Without more evidence, the Court is persuaded Torrez was substantially motivated to stop the NMCG from acting as a paramilitary group. Even with additional evidence, the Tenth Circuit is of the opinion

*IV.    Conclusion*

For the reasons discussed above, this Court concludes Defendant Raul Torrez is entitled to absolute prosecutorial immunity as a matter of law because filing a civil suit for the safety of the public of Bernalillo County was within his duties as the District Attorney. Therefore, this Court grants Defendant Raul Torrez's Motion for Summary Judgment.

IT IS SO ORDERED.

*[signature]*
UNITED STATES DISTRICT JUDGE

---

"being properly named as a defendant in a declaratory judgment suit, however styled, would not chill a person of ordinary firmness from continuing to engage in constitutionally protected activity." *Shero v. City of Grove*, 510 F.3d 1196, 1204 (10th Cir. 2007).